UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
KENNETH GRAFTON,

                              Plaintiff,

              -against-                                          15-CV-4564 (SJF)(GRB)

COUNTY OF NASSAU, ARMOR CORRECTIONAL                            **OPINION and ORDER**
HEALTH OF NEW YORK, INC., JOSE ARMAS, M.D.,
and CHILDA MARGOS, M.D.,

                              Defendants.
----------------------------------------------------------------------X
FEUERSTEIN, District Judge:

       Pending before the Court is the motion of defendants Armor Correctional Health Services

of New York, Inc. ("Armor"), the County of Nassau ("the County"), Jose Armas, M.D. ("Dr.

Armas") and Childa Margos, M.D. ("Dr. Margos") (collectively, "defendants") seeking dismissal

of all claims asserted against them by plaintiff Kenneth Grafton ("plaintiff") pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)") and the Prison Litigation

Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  For the reasons set forth below, defendants'

motion is granted.


I.      BACKGROUND

       A.      Factual Background[1]

       At all relevant times, plaintiff was an inmate confined to the Nassau County Correctional

_____

[1]  The following facts are taken from the allegations in plaintiff's complaint and opposition to
defendants' motion to dismiss, and from the exhibits attached thereto, and are assumed to be true
for the purpose of this motion.  They do not constitute findings of fact by the Court.

1

Center ("NCCC"). (Complaint ["Compl."], ¶ 3). Armor is a private company that provides medical services to inmates at the NCCC pursuant to a contract with the County. (*Id.*, ¶¶ 4-5). Dr. Armas is allegedly the sole owner and shareholder of Armor, (*id.*, ¶ 6); and Dr. Margos is allegedly the chief medical officer of Armor at the NCCC. (*Id.* ¶ 8).

Plaintiff alleges that he "suffers from Rheumatoid Arthritis, Osteo-Arthritis, Osteoporosis, Osteopenia, Neuralgia, Neuritis, Neurasthenia, Neurosis, Dermatitis, Mental and Emotional injury as well as bodily injury." (Compl., ¶ 12). According to plaintiff, he "has chronic pain throughout his entire body, a loss of cartlidge [sic] in between joints, deteriation [sic] and weakness of bones, no full range of motion, deformity, loss of strength, back pain and spasms and a big long nasty looking [sic] scar that runs from the right side of the chest, under the right armpit and all over the right side of his back which was received while in the care of [Armor]." (*Id.*, ¶ 13). Plaintiff alleges, *inter alia*, (1) that he "was denied his right to be taken to the hospital and have test [sic] ran [sic] on him to see what caused his skin to break out with an infection of open sores[,]" (*id.*, ¶ 14); (2) that Armor staff members told him "that they will not send him out to see a Dermatologist for treatment of his skin for the permanent scars that he received in their (Armor/Armas) care . . . ," (*id.*); (3) that he "has also been denied the right to see a pain management specialist and a neurologist for his condition which is not improving in the care of [Armor]," (*id.*, ¶ 15); and (4) that he "is not receiving the proper pain medication for his chronic pain from the chronic disease that he suffers from, as prescribed by specialist in that field." (*Id.*, ¶ 16).

On July 2, 2015, plaintiff "put in a sick call slip requesting to be seen by [Dr. Margos]," (Compl., ¶ 17), and was seen by Dr. Margos that same day. (*Id.*) According to plaintiff, he asked

Dr. Margos "to override the Armor/Armas policies of blanket denial [of] 1) pain management medication; and 2) access to a specialist[,]" (*id.*, ¶ 18), but Dr. Margos responded "in sum and substance, [that] the only time [she] will override the pain medication policy is if [an inmate] ha[s] 'something like terminal cancer' and the only time [she] will send [an inmate] out to the hospital to see a specialist [is] if it is 'something life threatning [sic].'" (*Id.*, ¶ 19). Plaintiff further alleges, *inter alia*, that Dr. Margos commented, "if you want good medication sir, don't come to jail. Here we just are required to keep you alive." (*Id.*, ¶ 20).

B.  Procedural History

On or about July 22, 2015, plaintiff commenced this action pursuant to 42 U.S.C. § 1983 ("Section 1983")[2] alleging, *inter alia*, (1) that the County was deliberately indifferent to his serious medical needs by adopting a "policy to outsource the medical care of inmates confined in the NCCC" to Armor, (Compl., ¶ 4; *see also id.*, ¶ 22); (2) that Armor and Dr. Armas were deliberately indifferent to his serious medical needs by "develop[ing] and promulgat[ing] official policies or customs . . . [of] [b]lanket denial[s] of pain management medication . . . [and] access to community-based providers, both specialist and facilities, notwithstanding medical needs," (*id.*, ¶ 7; *see also id.*, ¶ 23); and (3) that Dr. Margos was deliberately indifferent to his serious medical needs by "refus[ing] to exercise her authority to override Armor/Armas policy, notwithstanding [his] medical needs[,]" (*id.*, ¶ 24). Plaintiff seeks, *inter alia*: (1) judgment declaring that the policies of the County, Armor and Dr. Armas, and "the acts of [Dr. Margos] in refusing to exercise her authority to override the policies of Armor and Armas," (*id.*, §

---

[2] Plaintiff expressly asserts no state law claims in this action. (Compl., ¶ 11).

VII(A)(3)), subject him "and others" to cruel and unusual punishment; (2) injunctive relief (a) enjoining the policies of the County, Armor and Dr. Armas, and (b) compelling defendants (i) "to have a Dermatologist treat [his] skin," (*id.*, § VII(B)(3)), (ii) to have him "diagnosed by a Neurologist to see if he is being treated properly by [Armor and Dr. Armas] for his nerve condition," (*id.*), and (iii) to have him "see a Rheumatologist and a pain management specialist so he can receive *better and stronger* pain medication since no treatment plan or diagnoses of [Armor and Dr. Armas] is improving or helping [his] condition[,]" (*id.*) (emphasis added); and (3) "compensatory, punitive and special damages" in the total amount of ten million dollars ($10,000,000.00), together with interest, "reasonable attorney fees" and costs. (*Id.*, § VII(C)).

Defendants now move pursuant to Rule 12(b)(6) and the PLRA to dismiss plaintiff's claims in their entirety for failure to state a claim for relief and failure to exhaust administrative remedies.


II.    DISCUSSION

A.    Standard of Review

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The plausibility standard requires "more than a sheer possibility that a defendant has acted

unlawfully." *Id.*

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. 544, 127 S. Ct. at 1959.

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 176 (2d Cir. 2013); *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679, 129 S. Ct. 1937. "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.; see also Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010).

Nonetheless, a plaintiff is not required to plead "specific evidence or extra facts beyond what is needed to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120-1 (2d Cir. 2010); *accord Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret.*

*Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 729-30 (2d Cir. 2013). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679, 129 S. Ct. 1937.

In deciding a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *see also ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 715, 190 L. Ed. 2d 441 (2014).

Moreover, although a *pro se* complaint "must be construed liberally to raise the strongest arguments it suggests[,] * * * [it] must state a plausible claim for relief." *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir.2013) (internal citations, quotation marks, and brackets omitted)).


B.      The PLRA

Section 1997e(a) of the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Accordingly, the PLRA does not require the exhaustion of all administrative remedies, but only those that are 'available' to the inmate." *Hubbs v. Suffolk County Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015). "To be 'available' under the PLRA, a

remedy must afford the possibility of some relief for the action complained of." *Id.* (quotations and citations omitted). "Whether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements." *Id.*

"[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 86, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002); *accord Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012). "The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford*, 548 U.S. at 93, 126 S. Ct. 2378 (alterations, quotations and citation omitted); *see also Parisi v. Davidson*, 405 U.S. 34, 37-38, 92 S. Ct. 815, 31 L. Ed. 2d 17 (1972) ("The basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence– to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies."); *Matter of Gould Publ'g Co.*, 934 F.2d 457, 460 (2d Cir. 1991) ("the principal reasons for requiring exhaustion include protecting administrative autonomy by allowing agencies an opportunity to assert their policy preferences, apply their expertise, develop the factual record and correct their own errors, and conserving judicial resources by barring piecemeal review of cases

that may in any event be mooted if the agency grants the relief sought.")

"The PLRA also was intended to reduce the quantity and improve the quality of prisoner suits." *Woodford*, 548 U.S. at 93, 126 S. Ct. 2378; *see also Porter*, 534 U.S. at 524-25, 122 S. Ct. 983. "Proper exhaustion reduces the quantity of prisoner suits because some prisoners are successful in the administrative process, and others are persuaded by the proceedings not to file an action in federal court." *Woodford*, 548 U.S. at 94, 126 S. Ct. 2378.

"[T]he PLRA exhaustion requirement requires proper exhaustion," *Woodford*, 548 U.S. at 93, 126 S. Ct. 2378; *see also Johnson*, 680 F.3d at 238, "that is, using all steps that the agency holds out, and doing so properly." *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (quotations and citation omitted); *see also Porter*, 534 U.S. at 524; 122 S. Ct. 983 ("All 'available' remedies must . . . be exhausted."); *Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007) ("[T]o satisfy the PLRA a prisoner must . . . procedurally exhaust his available administrative remedies." (emphasis omitted)). "This entails both completing the administrative review process in accordance with the applicable procedural rules . . . and providing the level of detail necessary in a grievance to comply with the grievance procedures." *Amador*, 655 F.3d at 96 (alterations, quotations and citations omitted). "The exhaustion inquiry . . . requires that [the court] look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009).

"[F]ailure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216, 127 S. Ct. 910; *see also Hubbs*, 788 F.3d at 59 ("Because failure to exhaust is an affirmative defense, . . . defendants bear the initial burden of establishing, by pointing to legally sufficient

sources such as statutes, regulations, or grievance procedures, that a grievance process exists and

applies to the underlying dispute[.]" (quotations, alterations and citations omitted)).  Like other

affirmative defenses, failure to exhaust may be grounds for dismissal under Rule 12(b)(6) of the

Federal Rules of Civil Procedure if the defense appears on the face of the complaint.  *See*

*Kucharczyk v. Westchester County*, 95 F. Supp. 3d 529, 546 (S.D.N.Y. 2015); *Butler v. Suffolk*

*County*, 289 F.R.D. 80, 92 (E.D.N.Y. 2013); *see also Sewell v. Bernardin*, 795 F.3d 337, 339 (2d

Cir. 2015) ("Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when a defendant raises a

statutory bar, . . . as an affirmative defense and it is clear from the face of the complaint, and

matters of which the court may take judicial notice, that the plaintiff's claims are barred as a

matter of law." (quotations and citation omitted); *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d

Cir. 2013) ("Affirmative defenses may be adjudicated at th[e] [pleadings] stage in the litigation . .

. where the facts necessary to establish the defense are evident on the face of the complaint.")

Moreover, "the affirmative defense of exhaustion is subject to estoppel."  *Ziemba v.*

*Wezner*, 366 F.3d 161, 163 (2d Cir. 2004); *see also Ruggiero v. County of Orange*, 467 F.3d 170,

178 (2d Cir. 2006).  "A prisoner may invoke the doctrine of estoppel when defendants took

affirmative action to prevent him from availing himself of grievance procedures."  *Amador*, 655

F.3d at 103 (quotations and citation omitted); *see also Ruggiero*, 467 F.3d at 178.  "[V]erbal and

physical threats of retaliation, physical assault, denial of grievance forms or writing implements,

and transfers constitute such affirmative action."  *Amador*, 655 F.3d at 103.

The Second Circuit formulated the following three (3)-part test in determining a failure to

exhaust affirmative defense:

> "Depending on the inmate's explanation for the alleged failure to exhaust, the
> court must ask whether administrative remedies were in fact available to the

prisoner.  The court should also inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense.  If the court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that the plaintiff nevertheless did not exhaust available remedies, the court should consider whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements."

*Macias*, 495 F.3d at 41 (quoting *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)); *see also Amador*, 655 F.3d at 102.  "If any of the three parts is satisfied, the prisoner is deemed to have exhausted internal procedures for purposes of the PLRA."  *Amador*, 655 F.3d at 102.

1.      The NCCC's Inmate Grievance Procedure

The rules and regulations of the New York State Commission of Correction, applicable to the NCCC, see http://www.scoc.ny.gov/jailaddre.htm#Nassau, provide a three (3)-step process for the handling of inmate grievances.[3]  To initiate the process, "[a]n inmate must file a grievance within five days of the date of the act or occurrence giving rise to the grievance[,]" N.Y. Comp. Codes R. & Regs. tit. 9, § 7032.4(d), with the grievance coordinator designated by the chief administrative officer.  *Id.*, § 7032.4(e).  A "grievance" is defined, in relevant part, as "a written inmate complaint concerning either written or unwritten facility policies, procedures, rules, practices, programs or the action or inaction of any person within the facility."  N.Y. Comp. Codes R. & Regs., tit. 9, § 7032.2(a).  "[A] grievance that is too vague to understand or fails to

---

[3]  Pursuant to the applicable regulations, "[t]he chief administrative officer of each local correctional facility shall ensure the development and implementation of written policies and procedures consistent [therewith]."  N.Y. Comp. Codes R. & Regs., tit. 9, § 7032.3.  The NCCC has done so.

set forth supporting evidence or information may be returned to the inmate." *Id.*, § 7032.4(f).

"Within two business days after receipt of the grievance coordinator's written determination, the grievant may appeal to the chief administrative officer or his designee." *Id.*, § 7032.4(j). "Within three business days of the receipt of the chief administrative officer's determination, any grievant may appeal any grievance denied by the facility administrator, in whole or in part, to the [Citizen's Policy and Complaint Review Council of the New York] State Commission of Correction by indicating his/her desire to appeal on the inmate grievance form in the space provided for such purpose." *Id.*, § 7032.5. Thus, it is clear that administrative remedies were available at the NCCC.

### 2. Plaintiff's Grievances

In his complaint, plaintiff conclusorily alleges that on unspecified dates in 2015, he "grieved" both of the purported policies of Armor and Dr. Armas, *i.e.*, their blanket denials of pain management and access to community-based providers. (Compl., ¶¶ 9-10). However, he does not allege what steps he took to "grieve[]" those policies, nor what the outcome of those grievances was. In addition, plaintiff does not allege that he ever grieved the purported policy of the County or the conduct of Dr. Margos of which he complains.

In his opposition to defendants' motion to dismiss, plaintiff attached a copy of a letter from the Public Integrity Bureau of the New York State Office of the Attorney General to the Commissioner of the New York State Commission of Correction, dated June 25, 2015, referencing "Complaint # 15-1139" and indicating, in relevant part:

> "The attached correspondence was received by the Attorney General's office. After an initial review of the documents, we have determined that the issues

11

> mentioned pertain to your office.  Accordingly, we are referring this material to
> you for whatever action you deem appropriate."

(Plf. Opp., Ex. A).  Plaintiff did not provide "the attached correspondence," nor indicate what his

complaint to the New York State Attorney General was about.  In any event, plaintiff's

correspondence to the New York State Attorney General does not comply with the NCCC's

grievance procedures requiring at the first step that a grievance be filed with the designated

grievance coordinator.

In addition, plaintiff attached one (1) grievance form, dated July 22, 2015, *i.e.*, the same

date the complaint was filed in this action,[4] describing the issues he was grieving as follows:

> "[Armor] will not take pictures of the scars and keloids I have to now live with for
> the rest of my life and when I ask them to send me to a Dermatologist Armor staff
> becomes combative, walk off and ignore my health care."

(*Id.*, Ex. C).  Plaintiff requested the following relief with respect to that grievance:

> "I want pictures taken of the lifetime scars and keloids on my right chest, under
> my right armpit, and on the right side of my back from a skin rash I received while
> in (Armor) Care in which they are refusing me a dermatologist to treat my skin."

(*Id.*)  Plaintiff indicates only that his July 22, 2015 was "unanswered."  (Plf. Opp., ¶ 7).

Plaintiff does not indicate when Armor purportedly refused to take pictures, nor when he

requested to be sent to a dermatologist.  He does, however, submit a sick call request dated June

22, 2015, *i.e.*, thirty (30) days prior to the date of his grievance, indicating, in relevant part, "I

was diagnosed today by a doctor (Kang) and was told that I do not have shingles while examining

me.  I would like to see a dermatologist because I am getting worried.  There are [illegible] on my

---

[4]  The "prison malibox rule" is not implicated in this case since, *inter alia*, the complaint was
received by the Court two (2) days after it was dated by plaintiff and presumably delivered to
prison authorities for mailing.  *See Walker v. Jastremski*, 430 F.3d 560, 563-64 (2d Cir. 2005).

back and I would like to know what it is, so I can be properly treated." (Plf. Opp., Ex. B). In addition, he alleges that on July 2, 2015, *i.e.*, twenty (20) days prior to the date of his grievance, he requested that Dr. Margos send him to an unidentified specialist, (Compl., ¶ 18), to see his scars. (Plf. Opp., ¶ 7). Thus, plaintiff's July 22, 2015 grievance was not timely or properly filed in accordance with the NCCC's grievance procedures, *i.e.*, within five (5) days of the act or occurrence giving rise to the grievance.

It is clear from plaintiff's allegations in his complaint and opposition to defendants' motion to dismiss, and from the documents attached thereto, that plaintiff did not properly complete even the first step of the NCCC's grievance procedure with respect to any of the conduct challenged in his complaint, and there are no factual allegations from which it may reasonably be inferred (a) that administrative remedies were not available to him with respect to such conduct; (b) that defendants may have forfeited, or may be estopped from raising, the affirmative defense of non-exhaustion; or (c) that special circumstances otherwise exist justifying his failure to exhaust his claims. Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's claims against them pursuant to Section 1997e(a) of the PLRA is granted and plaintiff's claims in this action are dismissed in their entirety for his failure to exhaust administrative remedies.

C.     Section 1983

Section 1983 of Title 42 of the United States Code provides, in relevant part, that:

> "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution

and laws, shall be liable to the party injured . . . ."

To state a claim under Section 1983, a plaintiff must allege (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)); *see also Rehberg v. Paulk*, 132 S. Ct. 1497, 1501-02, 182 L. Ed. 2d 593 (2012). The non-conclusory factual allegations in plaintiff's complaint fail to satisfy the second element, *i.e.*, to state a plausible claim that plaintiff was deprived of a constitutional or federal right.

### 1. Claims against Dr. Armas

A Section 1983 claim must allege the personal involvement of an individual defendant in the purported constitutional deprivation. *See Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015); *Raspardo v. Carlone*, 770 F.3d 97, 115, 116 (2d Cir. 2014); *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013). "An individual cannot be held liable for damages under § 1983 merely because he held a high position of authority, but can be held liable if he was personally involved in the alleged deprivation." *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004) (quotations and citation omitted); *see also Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) ("[M]ere linkage in the prison chain of command is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." (quotations and citation omitted)); *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) ("[S]upervisor liability in a § 1983 action depends on a

showing of some personal responsibility, and cannot rest on *respondeat superior*. . . . Similarly, proof of linkage in the prison chain of command is insufficient." (quotations and citations omitted)). "Personal involvement can be established by showing that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring."

*Littlejohn*, 795 F.3d at 314 (quoting *Back*, 365 F.3d at 127); *accord Grullon*, 720 F.3d at 139. "In this Circuit, a 'direct participant' [in the constitutional violation] includes a person who authorizes, orders, or helps others to do the unlawful acts, even if he or she does not commit the acts personally." *Terebesi v. Torreso*, 764 F.3d 217, 234 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 1842, 191 L. Ed. 2d 723 (2015).

"In addition to fulfilling one of th[e] requirements [for supervisory liability], a plaintiff must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation." *Littlejohn*, 795 F.3d at 314 (quoting *Raspardo*, 770 F.3d at 116).

Plaintiff has not alleged the direct participation of Dr. Armas in any of the alleged violations of his constitutional rights, nor any basis upon which to find him liable in a supervisory capacity. Although plaintiff alleges that Dr. Armas created the policies of denying pain management medication and access to community-based providers to inmates at the NCCC "notwithstanding medical need[,]" (Compl., ¶ 7), those allegations, without more, are insufficient to state a plausible claim for relief. *See, e.g. Lindsey v. Butler*, 43 F. Supp. 3d 317, 330 (S.D.N.Y. 2014), *reconsideration granted on other grounds*, 2014 WL 5757448 (S.D.N.Y. Nov.

5, 2014) ("In order to hold supervisors liable for creating a custom or policy fostering a constitutional violation, courts in this Circuit have required that plaintiffs plead more than conclusory allegations of the existence of the custom or policy." (citing cases)); *Parris v. New York State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 364 (S.D.N.Y. 2013) ("Conclusory, unsupported allegations of . . . the existence of a policy are simply insufficient to establish liability of supervisory prison officials under § 1983." (quotations, brackets and citation omitted)); *Zembiec v. County of Monroe*, 766 F. Supp. 2d 484, 498 (W.D.N.Y. 2011), *aff'd* 468 F. App'x 39 (2d Cir. Mar. 15, 2012) (holding that conclusory allegations that a supervisory official maintained an unconstitutional policy, "absent some factual allegations in support of those assertions" are insufficient to state a claim for relief).  Plaintiff fails to plead any factual allegations from which it may reasonably be inferred that a custom or policy existed to deny inmates at the NCCC pain management medication and access to community-based providers "notwithstanding medical need," (Compl., ¶ 7), or that Dr. Armas was ever aware that any inmate at the NCCC was denied pain management medication or access to community-based providers that was medically necessary.  Indeed, the factual allegations and documents submitted by plaintiff in opposition to defendants' motion indicate only that on one (1) occasion in June, he submitted a sick call request requesting to see a dermatologist; that on one (1) occasion in July, he saw Dr. Margos, who refused to prescribe him the pain medication he wanted or to send him to a specialist; that he filed one (1) grievance based upon Armor's refusal to take pictures of his scars and keloids and to send him to a dermatologist on July 22, 2015, *i.e.*, the same date he filed his complaint in this action; and that on August 25, 2015, *i.e.*, approximately one (1) month after he filed the complaint in this action, he submitted a sick call request requesting to see the results

of a blood test taken from him more than one (1) month earlier by Dr. Margos. (Plf. Opp. at Ex. B). Allegations of a single incident in which plaintiff was denied pain medication and, at most, two (2) incidents where his request to see an outside specialist was denied, are insufficient to establish the existence of a custom or policy. *See, e.g. Lindsey*, 43 F. Supp. 3d at 330-31; *Parris*, 947 F. Supp.2d at 364. Thus, the branch of defendants' motion seeking dismissal of plaintiff's claims against Dr. Armas pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and plaintiff's claims against Dr. Armas are dismissed in their entirety for failure to state a claim for relief.

2.  Claims against the County and Armor

"Private employers [acting under color of state law] are not liable under Section 1983 for the constitutional torts of their employees * * * unless the plaintiff proves that action pursuant to official . . . *policy* of some nature caused a constitutional tort." *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408 (2d Cir. 1990); *see also Green v. City of New York*, 465 F.3d 65, 82 (2d Cir. 2006) (finding that a hospital was not vicariously liable for any constitutional torts that its employees may have committed). To prevail on a Section 1983 claim against a municipality or private company acting under color of state law, a plaintiff must show: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality [or private company acting under color of state law] caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008); *see also Connick v. Thompson*, 563 U.S. 51, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011) ("Plaintiffs who seek to impose liability on local governments under Section 1983 must prove

that 'action pursuant to official municipal policy' caused their injury." (quoting *Monell v. Department of Soc. Servs. of City of New York*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)); *Rojas*, 924 F.2d at 409 ("Although *Monell* dealt with municipal employers, its rationale has been extended to private businesses [acting under color of state law].") For purposes of this motion, damages are presumed. Moreover, although Armor is a private company contracted to perform medical services for prisoners at the NCCC, *see, e.g., Briel v. Sposato*, No. 12-CV-2868, 2012 WL 3697806, at *5 (E.D.N.Y. Aug. 21, 2012), "anyone whose conduct is 'fairly attributable to the state' can be sued as a state actor under § 1983." *Filarsky v. Delia*, --- U.S. ----, 132 S. Ct. 1657, 1661, 182 L. Ed. 2d 662 (2012); *see also Hollander v. Copacabana Nightclub*, 624 F.3d 30, 33 (2d Cir. 2010). As the entity with which the NCCC contracted to provide medical services to its prisoners, Armor was acting under color of state law for purposes of Section 1983 with respect to its duties in rendering such medical services to inmates at the NCCC, including plaintiff. *See West v. Atkins*, 487 U.S. 42, 54, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988) (holding that a physician employed to provide medical services to state prisoners "acted under color of state law for purposes of Section 1983 when undertaking his duties in treating [the plaintiff's] injuries.")

"Official * * * policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. 51, 131 S. Ct. at 1359. In addition, liability can be established "by showing that a policymaking official ordered or ratified the employee's actions - either expressly or tacitly." *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012). "Thus, a plaintiff can prevail against a municipality [or private company acting under color of state law] by showing

18

that the policymaking official was aware of the employee's unconstitutional actions and consciously chose to ignore them." *Id.* To establish such deliberate indifference, "a plaintiff must show that a policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights." *Id.*

Plaintiff's conclusory allegations regarding the purported policies of the County and Armor are insufficient to state a Section 1983 *Monell* claim against them. *See, e.g. Biswas v. City of New York*, 973 F. Supp. 2d 504, 539 (S.D.N.Y. 2013) *appeal dismissed sub nom Biswas v. Kwait*, 576 F. App'x 58 (2d Cir. Aug. 25, 2014), *as amended* (Aug. 28, 2014) ("[C]onclusory, boilerplate allegations are insufficient to state a claim based on the existence of an official policy."); *Solomon v. Nassau County*, 759 F. Supp. 2d 251, 263 (E.D.N.Y. 2011) ("Conclusory allegations of municipal custom or policy are insufficient to satisfy [*Monell*].") Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's claims against the County and Armor pursuant to Rule 12(b)(6) is granted and plaintiff's Section 1983 claims against the County and Armor are dismissed in their entirety for failure to state a claim for relief.

### 3. Claims against Dr. Margos

Prison officials have a duty, imposed under either the Eighth Amendment with respect to convicted prisoners or the Due Process Clauses of the Fifth and Fourteenth Amendments with respect to pretrial detainees in federal custody and state custody, respectively,[5] to "ensure that

---

[5] The same "deliberate indifference" standard applies to claims challenging prison conditions regardless of whether the claim is brought under the Eighth Amendment or the Due Process Clauses of the Fifth and Fourteenth Amendments. *See Caiozzo v. Koreman*, 581 F.3d 63, 70-1

inmates receive adequate food, clothing, shelter, and medical care, and [to] take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832-33, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (quotations and citations omitted). Plaintiff seeks to assert a Section 1983 claim against defendants for deliberate indifference to his serious medical needs, which has both an objective and subjective component. *See Spavone*, 719 F.3d at 138; *Collazo v. Pagano*, 656 F.3d 131, 135 (2d Cir. 2011).

The objective component of a deliberate indifference claim requires that "the alleged deprivation * * * be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain, exists." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)); *see also Farmer*, 511 U.S. at 834, 114 S. Ct. 1970 ("First, the deprivation alleged must be, objectively, sufficiently serious." (quotations and citation omitted)). In order to determine whether an alleged deprivation of medical care was objectively serious, the court must inquire (1) whether the inmate was "actually deprived of adequate medical care," i.e., whether the prison officials acted reasonably in response to the inmate's medical needs; and (2) "whether the inadequacy in medical care [was] sufficiently serious," i.e., how the challenged conduct was inadequate and what harm, if any, the inadequacy has caused or will likely cause the inmate. *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006); *see also Thompson v. Racette*, 519 F. App'x 32, 33-34 (2d Cir. June 4, 2013) (summary order).

"[I]f the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently

_____

(2d Cir. 2009).

serious." *Salahuddin*, 467 F.3d at 280. "In cases where the inadequacy is in the medical treatment given, the seriousness inquiry is narrower[,]" *id.*, and the focus is "on the alleged inadequate treatment, not the underlying condition alone." *Butler v. Furco*, 614 F. App'x 21, 22 (2d Cir. Aug. 25, 2015) (summary order); *accord Hale v. Rao*, 768 F. Supp. 2d 367, 378 (N.D.N.Y. 2011); *Jordan v. Fischer*, 773 F. Supp. 2d 255, 275 (N.D.N.Y. 2011).

"Subjectively, the official must have acted with the requisite state of mind, the 'equivalent of criminal recklessness,'" *Collazo*, 656 F.3d at 135 (quoting *Hathaway*, 99 F.3d at 553); *see also Farmer*, 511 U.S. at 834, 114 S. Ct. 1970 (holding that the second requirement for a deliberate indifference claim is that a prison official must have acted or failed to act with a "sufficiently culpable state of mind"); *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) (holding that a deliberate indifference claim "mandate[s] inquiry into a prison official's state of mind"), *i.e.*, the official must have "act[ed] or fail[ed] to act while actually aware of a substantial risk that serious inmate harm will result." *Salahuddin*, 467 F.3d at 280; *see also Farmer*, 511 U.S. at 842, 114 S. Ct. 1970; *Caiozzo*, 581 F.3d at 72 (holding that the plaintiff must establish that the official "knew of and disregarded an excessive risk to [the plaintiff's] health or safety and . . . was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference." (alterations and quotations omitted)). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835, 114 S. Ct. 1970; *see also Walker*, 717 F.3d at 125.

Generally, "mere allegations of negligent malpractice do not state a claim of deliberate indifference." *Hathaway*, 99 F.3d at 553; *see also Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) ("[A] complaint that a physician has been negligent in diagnosing

or treating a medical condition does not state a valid claim . . . under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Hill*, 657 F.3d at 123 ("Medical malpractice does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness– an act or a failure to act by a prison doctor that evinces a conscious disregard of a substantial risk of serious harm." (quotations and citation omitted)); *Hernandez*, 341 F.3d at 144 ("'Deliberate indifference' describes a mental state more blameworthy than negligence . . . [and] is a state of mind that is the equivalent of criminal recklessness. . . . A showing of medical malpractice is therefore insufficient to support an Eighth Amendment claim unless the malpractice involves culpable recklessness, i.e., an act or a failure to act . . . that evinces a conscious disregard of a substantial risk of serious harm." (internal quotations and citations omitted)).

Moreover, "a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment." *Hill*, 657 F.3d at 123; *see also Hanrahan v. Mennon*, 470 F. App'x 32, 33 (2d Cir. May 18, 2012) (summary order). "[M]ere disagreement over the proper treatment does not create a constitutional claim." *Hill*, 657 F.3d at 123 (quoting *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)). "[T]he essential test is one of medical necessity and not one simply of desirability." *Id.* (quoting *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986)).

Plaintiff's only claims against Dr. Margos is that she did not provide him with the "better and stronger" pain medication that he wanted for his chronic medical condition or send him to the specialist he requested to see about his scars. Such disagreement as to the appropriate pain medication to provide to an inmate or the need for a specialist does "not support a claim that the

doctor was deliberately indifferent to the inmate's 'serious' medical needs." *Wright v. Genovese*, 694 F. Supp. 2d 137, 160 (N.D.N.Y. 2010), *aff'd*, 415 F. App'x 313 (2d Cir. Mar. 23, 2011) (citing cases); *see also Veloz v. New York*, 339 F. Supp. 2d 505, 525 (S.D.N.Y. 2004), *aff'd*, 178 F. App'x 39 (2d Cir. Apr. 24, 2006) ("While prisoners have a right to medical care, they do not have a right to chose a specific type of treatment. . . . Differences in opinion . . . over the appropriate medication to be prescribed is a disagreement over a treatment plan and does not implicate the Eighth Amendment."); *Banks v. Annucci*, 48 F. Supp. 3d 394, 408 (N.D.N.Y. 2014) ("[D]isagreements over medications, diagnostic techniques . . . , forms of treatment, or the need for specialists [] are not adequate grounds for a section 1983 claim." (quotations, alterations and citation omitted)); *Randle v. Alexander*, 960 F. Supp. 2d 457, 481 (S.D.N.Y. 2013) (accord); *Jordan v. Fischer*, 773 F. Supp. 2d 255, 276 (N.D.N.Y. 2011) ("Disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment. . . . Even if those medical judgments amount to negligence or malpractice, malpractice does not become a constitutional violation simply because the plaintiff is an inmate. . . . Thus, any claims of malpractice, or disagreement with treatment are not actionable under Section 1983." (citations omitted)).

Nor does plaintiff allege any facts from which it may reasonably be inferred that Dr. Margos acted with the requisite state of mind, *i.e.*, disregarded a substantial risk to plaintiff's health and safety, in providing plaintiff with a different pain medication for his chronic medical condition than the medication he wanted or failing to send him to the specialist he requested to see about his scars. Accordingly, the branch of defendants' motion seeking dismissal of

plaintiff's Section 1983 claims against Dr. Margos pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and plaintiff's Section 1983 claims against Dr. Margos are dismissed in their entirety for failure to state a claim for relief.

### 4. Claims for Declaratory and Injunctive Relief

"[A]n inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility." *Salahuddin*, 467 F.3d at 272; *accord Shepherd v. Goord*, 662 F.3d 603, 610 (2d Cir. 2011). Plaintiff is currently incarcerated at FCI (Federal Correctional Institution) Fairton, located at 655 Fairton-Millville Road, Fairton, New Jersey 08320. *See* https://www.bop.gov/inmateloc/. Since plaintiff is no longer incarcerated at the NCCC, his claims for injunctive and declaratory relief are dismissed in their entirety as moot.

### D. Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a party shall be given leave to amend "when justice so requires." Although "a *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated[,]" *Nielsen*, 746 F.3d at 62 (quotations and citation omitted); *accord Grullon*, 720 F.3d at 139-40, leave to amend may be denied, *inter alia*, when amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962); *Nielsen*, 746 F.3d at 62; *Grullon*, 720 F.3d at 140. "Futility is a determination, as a matter of law, that . . . amendment[] would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Panther Partners*

*Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012); *accord IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015). Since the deficiencies in plaintiff's claims are substantive and not curable by way of re-pleading, any amendment to the complaint would be futile. Accordingly, plaintiff's claims are dismissed in their entirety with prejudice.[6]

III.     CONCLUSION

For the reasons set forth above, defendants' motion to dismiss plaintiff's claims in their entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and the PLRA is granted and plaintiff's claims are dismissed in their entirety with prejudice for failure to state a claim for relief. The Clerk of the Court shall enter judgment in favor of defendants, close this case and, pursuant to Rule 77(d)(1) of the Federal Rules of Civil Procedure, serve notice of entry of this order in accordance with Rule 5(b) of the Federal Rules of Civil Procedure.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed.2d 21 (1962).

SO ORDERED.

_____/s/_____
Sandra J. Feuerstein
United States District Judge

Dated:  July 15, 2016
            Central Islip, New York

---

[6]  In light of this determination, it is unnecessary to consider defendants' remaining contentions.